## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **Zilkr Cloud Technologies, LLC** *Plaintiff,* v. **Cisco Systems, Inc.** *Defendant.* | CASE NO. Jury Trial Demanded |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Zilkr Cloud Technologies, LLC ("Zilkr") files this original complaint for patent infringement against Defendant Cisco Systems, Inc. ("Cisco") and in support alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. § 271, et seq., based on Cisco's unauthorized and willful infringement of Zilkr's patented inventions.

### THE PARTIES

2. Zilkr is a Texas limited liability company with its principal place of business at 10601 Little Thicket Rd, Austin, Texas 78736.

3. Upon information and belief, Cisco is a Delaware corporation, having a principal place of business at 170 West Tasman Drive, San Jose, California 95134. Cisco offers its products, including those accused herein of infringement, to customers and/or potential customers located in the Eastern District of Texas. Cisco is registered to do business in Texas and may be served with process through its registered agent for service in Texas: Prentice Hall Corporation System, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

1

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action asserted herein under the Patent Laws of the United States, United States Code, Title 35. This is an action for patent infringement that arises under the patent laws of the United States, 35 U.S.C. § 271, et seq.

5. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. The Court has personal jurisdiction over Cisco because it has committed acts giving rise to this action within Texas and within this judicial district. Cisco also regularly does business or solicits business in this District and in Texas, engages in other persistent courses of conduct, derives substantial revenue from products and/or services provided in this District and in Texas, has purposefully established substantial, systematic and continuous contacts with this District, and should reasonably expect to be sued in a court in this District.

7. For example, Cisco has a regular and established place of business in the State of Texas and in this District, including office spaces located at 2250, 2300, and 2400 East President George Bush Turnpike, Richardson, Texas 75082. Cisco also conducts business with customers residing in this District and offers support service to customers in this District and Texas.

8. Cisco has committed acts of patent infringement in this District and elsewhere.

9. Cisco continues to grow its presence in this District, further cementing its ties to this District. Cisco operates a website and various advertising campaigns that solicit sales of the infringing products by consumers in the District and in Texas. On information and belief, Cisco has entered into partnerships with numerous resellers and distributors to sell and offer for sale the Accused Product to consumers in this District, and offers support services to customers in this District.

10. Cisco is registered to do business in Texas and maintains an agent authorized to receive service of process within Texas. Given these contacts, the Court's exercise of jurisdiction over Cisco will not offend traditional notions of fair play and substantial justice.

11. Venue is proper in the Eastern District of Texas under 28 U.S.C. §§1391 and 1400(b) because Cisco has a regular and established place of business in this District, including that Cisco maintains office locations in this District at 2250, 2300, and 2400 East President George Bush Turnpike, Richardson, Texas 75082, has committed acts within this District giving rise to this action and resulting in the derivation of substantial revenue from goods and services provided to customers in Texas, and continues to conduct business in this District, including one or more acts of selling, using, importing, and/or offering for sale infringing goods and/or performing support service thereof to Cisco's customers in this District.  For example, representatives of Cisco including Scott Henning, Justin Ramirez, and Alberto Montilla, met with representatives from Shango LLC, Zilkr's predecessor, at Cisco's Richardson, Texas offices to discuss Shango's platform and its innovative features.   Shango did not know that Cisco would take that information and copy it into the Accused Product.

## FACTUAL BACKGROUND

**Plaintiff Zilkr**

12. Zilkr is an Austin-based technology start-up that specializes in cloud technology to solve integration problems faced by telecommunications companies.

13. Zilkr is the owner, by assignment, of the patents-in-suit:  U.S. Patent Nos. 9,210,254 (the '254 Patent) attached as Exhibit A, 9,883,048 (the '048 Patent) attached as Exhibit B, 9,883,047 (the '047 Patent) attached as Exhibit C, and 9,998,607 (the '607 Patent) attached as Exhibit D.

14. Zilkr's predecessor, Shango LLC ("Shango"), was founded in 2013 by David Walsh and Evin Hunt of Austin, Texas, two inventors of the asserted patents. Shango was located in Austin, Texas and included a team of employees who were seasoned engineers with telecommunications and cloud domain expertise.  Shango was spun out of another company, StarView Solutions, to focus on development and commercialization of two platforms: Prism and Unify. Shango was a leading developer of API-based cloud platforms. Shango's Unify platform tied applications to a phone number provided by carriers to allow the user to customize their experience. Hunt believed that a crucial subscriber identifier was the telephone number.

15. Shango became Zilkr in April 2016. Both Shango and Zilkr were ahead of their time.  Zilkr and its predecessor developed products to unify applications, services, developers, and operator networks so that end users are ultimately more successful in doing the things that inspire them.

16. Zilkr and its predecessor recognized a limitation of then-existing telecommunications services, as set forth, for example, in the patents-in-suit.  By way of example, if a user wished to add services or application to their existing phone service, users had to navigate different ecosystems created by third-party providers. *See, e.g.*, Ex. A at 1:27-33. These ecosystems were outside of the user's phone service, which presented the user with challenges in managing and activating the services and applications. *See, e.g., id.*

17. Third-party service and application providers, on the other hand, faced challenges in integrating users because there was not a single platform to interconnect with all of a telecommunications company's users. *See, e.g.*, Ex. C at 7:15-28.

18. In the prior art systems, the number of services provided through a telecommunications provider were limited because for a third-party service to be integrated into

the telecommunications system, the third-party service must be adapted to work with the APIs of the telecommunications system. This caused problems for third-party service providers. By using a common interface, the unified services platform can act as a translation service for the third-party services. *See, e.g.*, Ex. C at 8:46-54. The inventors of the patents-in-suit recognized the need for a unified services platform to enable a telecommunications system with one-to-many third-party service and application integrations. *See, e.g.*, Ex. C at 7:15-28.

19. The inventors of the patents-in-suit believed that integrated services and applications in telecommunications systems were the future because they would allow remote working flexibility and allow for the integration of phone and other services and applications that customers use into one platform that could be personalized based on the needs of the user or business. *See, e.g.*, Ex. C at 7:2-14. Shango and Zilkr also believed that integrating phone services (e.g, voice and SMS/text messaging) with other services and applications into one platform would increase efficiencies and improve the capabilities of users to better perform at their jobs and serve their customers.

20. From their perspective, there was a need for third party services and operator networks seamlessly to come together to create the simplest and most advanced new ways for people to communicate that was customizable. Zilkr's inventions claimed in the patents-in-suit filled that need.

21. The patents-in-suit provide technical solutions for telecommunication systems. The patents-in-suit detail the systems and methods underlying this novel technology. Zilkr's technology succeeded in becoming integrated into the platforms of telecommunication companies. The Zilkr technology increases revenue and customer retention by allowing users to integrate multiple third-party services with the user's phone number all from a unified platform. *See, e.g.*,

Ex. C at 7:37-40 ("The ability to integrate into the unified platform once and become available everywhere thus greatly increases the value to the service, the network provider, and/or the user.").

22. The patents-in-suit describe and claim a particular way of integrating two separate technological systems—a telephony network, such a PSTN network, and a network of third-party applications connected via the internet. The patents-in-suit describe a seamless integration of the two through a number of different inventions disclosed in the asserted claims. Each of the patents-in-suit describe this integration through a unified services platform, which is pictured below. See, Ex. A, Fig. 4; Ex. B, Fig. 7; Ex. C, Fig. 7; Ex. D, Fig. 7.



FIG. 4

23. The claims of the patents-in-suit are not directed to abstract ideas and are not merely attempting to limit a method of organizing human activity or an idea itself to a particular technological environment. The claimed technology (e.g., utilizing a unified services platform to provide integrations between a telephony network and third-party application providers) are expressly directed to systems and methods of integrating telephony and third-party application services, which are not abstract methods or abstract ideas. The system and method of using a

unified services platform claimed in the patents-in-suit exists only in a tangible form, and the claimed inventions cannot be accomplished through pen-and-paper or the human mind—the claimed inventions require connecting two physical, distinct technological systems. As alleged above, the claimed methods provided a technical solution to an existing technical problem. Accordingly, the claims of the patents-in-suit are not directed to an abstract idea.

24. When viewed as a whole, the claims, including as an ordered combination of elements, are not merely a recitation of well-understood, routine, or conventional technologies or components. The claimed inventions were not well-known, routine, or conventional at the time of the invention and represent specific improvements over the prior art and existing systems and methods. The claimed technology (e.g., utilizing a unified services platform to provide integrations between a telephony network and third-party application providers) was not known in the prior art at the time of the invention, let alone well-known, routine, or conventional.

**Cisco's Infringing Product**

25. Cisco's infringing product, Webex (the "Accused Product"), is the leading global platform in communications and collaboration.[1] Recognizing the limitations of its original Webex platform for creating a true remote-work environment, Cisco announced in December 2019 that it planned to release a unified Webex app, which would enable common calling, meeting, and messaging experience for use on all Cisco calling solutions.[2]

26. Cisco touts the benefits of integration of third-party applications. Cisco's "reimagined app ecosystem is designed to help people find industry-leading apps with deep integrations with Webex in order to help move work forward" and "enhance your work

---

[1] https://blog.webex.com/cloud-phone-system/three-take-aways-from-first-ever-cisco-partner-u-s-cloud-calling-event/
[2] *Id.*

experience."[3]  "Webex isn't just about video conferencing and meetings.  Webex is a connections platform that helps people to get work done, whenever and wherever they need to."[4]

27. With its new platform, Webex allows a user "to create truly powerful custom integrations to redefine workflows and save time."[5]

28. To create its new Webex platform, Cisco took information from its meeting with Shango and copied those features into the Accused Product.  Specifically, on or around December 2014, Zilkr's predecessor, Shango, met with Cisco management to discuss its innovative Unify platform.  Later in March 2015, Shango met with many members of Cisco's Commercial Unified Communications team in Richardson, Texas and had a working session to discuss the Unify platform.  Upon information and belief, those in attendance at that meeting saw the benefits of enhancing the Cisco hosted unified communications systems with the features and functionality of Shango Unify.  Multiple meetings occurred with Cisco's product team regarding the features and functionalities that Shango's Unify platform could provide to Cisco.  At the time, Shango believed that Cisco was interested in incorporating the Shango Unify platform with its offerings—but Cisco just copied Shango's inventions instead.

## COUNT I—PATENT INFRINGEMENT OF THE '254 PATENT

29. Zilkr re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

30. The '254 Patent, entitled "Unified Services Platform Using a Telephone Number as a Common Subscriber Identifier" issued on December 8, 2015 to inventor Evin Hunt of Austin, Texas.  Zilkr is the owner, by assignment of the '254 Patent.  Zilkr owns all rights, interest, and

---

[3] https://blog.webex.com/hybrid-work/webex-app-hub-the-premier-collaboration-app-ecosystem-to-help-you-get-stuff-done/
[4] *Id.*
[5] *Id.*

8

title in and to the '254 Patent, including the right to bring this action and enforce the '254 Patent against infringers, and to collect damages for all relevant times.

31. Prior to the '254 Patent, if a user wished to add services or applications to their existing phone service, users had to navigate different ecosystems created by third-party providers. *See, e.g.*, Ex. A at 1:27-33. These ecosystems were outside of the user's phone service, which presented the user with challenges in managing and activating the services and applications. *See, e.g., id*. The inventions claimed in the '254 Patent solved these challenges by creating a unified services platform or unified storefront that allows for the association of internet protocol (IP) enabled services with telephone numbers. *See, e.g., id.* at 1:34-36, 1:43-55, claims 1-3. For example, the '254 Patent claims that the telephone number is associated with routing and interworking data necessary to utilize the third-party service or application.

32. Cisco has made, used, supplied, distributed, sold and/or offered for sale the Cisco Webex product, including its unified Webex app.

33. As set forth in the attached claim chart (Exhibit E), Cisco directly infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '254 Patent, for example, by making, using, selling, and/or offering to sell Webex subscription services.

34. In addition, Cisco knowingly induces its customers to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '254 Patent. At a minimum, Cisco has been aware of the '254 Patent before the filing of this complaint. Cisco directs, instructs, and supports its business customers using Webex through personal sales, customer support, and user and admin guides. In particular, Cisco instructs its customers to use the Webex product and configures the platform using a phone number as the common subscriber identifier, with knowledge of the '254 Patent and its infringement by the Webex Product. Cisco also instructs its

customers to view apps to integrate with Webex to take collaboration to the next level.[6] Cisco has induced infringement of the '254 Patent by manufacturing, supplying, distributing, selling and/or offering for sale the Accused Product to its customers with the knowledge and intent that those products would constitute direct infringement of the '254 Patent.

35. The preceding discussion of claim 1 in the '254 Patent serves as an example only. The Accused Product infringes other claims in the '254 Patent upon same or similar grounds. Zilkr reserves its right to identify additional claims and additional infringing products as supported by discovery in the case.

36. As a result of Cisco's unlawful infringement of the '254 Patent, Zilkr has suffered and will continue to suffer damage. Zilkr is entitled to recover from Cisco the damages suffered by Zilkr as a result of Cisco's unlawful acts of infringement.

37. Cisco has been aware of the '254 Patent before the filing of this complaint and its infringement has been willful and egregious. At a minimum, Cisco has knowledge of the '254 Patent through the filing of this complaint. Because of Cisco's willful and egregious infringement, Zilkr is entitled to enhanced damages, in the form of treble damages, under 35 U.S.C. § 284.

38. To the extent Cisco did not learn of the '254 Patent and its infringement before the filing of this complaint by virtue of its discussions with Shango and communications from Zilkr, Cisco was willfully blind to its infringement of the '254 Patent.

39. Furthermore, because Cisco's infringement of the '254 Patent is willful, this action is "exceptional" within the meaning of 35 U.S.C. § 285, entitling Zilkr to its attorneys' fees and expenses.

---

[6] https://blog.webex.com/hybrid-work/webex-integrations-and-embedded-apps/

40. On information and belief, Cisco intends to continue its unlawful infringing activity, and Zilkr will suffer irreparable harm for which there is no adequate remedy at law unless this court enjoins Cisco from further infringing activity.

41. Zilkr has complied with 35 U.S.C. § 287 with respect to the '254 Patent.

**COUNT II—PATENT INFRINGEMENT OF THE '048 PATENT**

42. Zilkr re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

43. The '048 Patent, entitled "Providing Individual Service Functionality Using Specific Actions" issued on January 30, 2018 to inventors Omar Paul and Evin Hunt of Austin, Texas.  Zilkr is the owner, by assignment of the '048 Patent.  Zilkr owns all rights, interest, and title in and to the '048 Patent, including the right to bring this action and enforce the '048 Patent against infringers, and to collect damages for all relevant times.

44. The '048 Patent is related to PCT/US2014/059959 and the '254 Patent.  Like the '254 Patent, the inventions of the '048 Patent help solve the challenges of compatibility across API interfaces. *See, e.g.*, Ex. B at 8:31-58. Third-party ecosystems that were outside of the user's phone service presented the user with challenges in managing and activating the services and applications. *See, e.g., id*. The inventions claimed in the '048 Patent solved these challenges by providing methods of developing and testing new application services through a unified services platform to ensure compatibility in response to triggering events occurring for a telephone number. *See, e.g.*, claim 13. For example, the API interfaces between the application service provider and the unified services platform allow the integration of the services offered by the application services with the unified services platform.  Further, the test environment can then be used to test the triggering events to ensure proper integration of the application service. Moreover, the '048

Patent discloses API testing for generating a response to triggering events that indicate the integration of the application service provider and the unified services platform. The '048 Patent indicates that testing generally includes providing triggers and communications to determine the responses that are generated.

45. As set forth in the attached claim chart (Exhibit F), Cisco directly infringes, either literally or under the doctrine of equivalents, at least claim 13 of the '048 Patent, for example, by making, using, selling, and/or offering to sell Webex subscription services.

46. The preceding discussion of claim 13 in the '048 Patent is just one example of Cisco's infringement. The Accused Product infringes other claims in the '048 Patent upon same or similar grounds. Zilkr reserves its right to identify additional claims and additional infringing products as supported by discovery in the case.

47. As a result of Cisco's unlawful infringement of the '048 Patent, Zilkr has suffered and will continue to suffer damage.  Zilkr is entitled to recover from Cisco the damages suffered by Zilkr as a result of Cisco's unlawful acts of infringement.

48. Cisco has been aware of the '048 Patent before the filing of this complaint and its infringement has been willful and egregious.  At a minimum, Cisco has knowledge of the '048 Patent through the filing of this complaint.  Because of Cisco's willful and egregious infringement, Zilkr is entitled to enhanced damages, in the form of treble damages, under 35 U.S.C. § 284.

49. To the extent Cisco did not learn of the '048 Patent and its infringement before the filing of this complaint by virtue of its discussions with Shango and communications from Zilkr, Cisco was willfully blind to its infringement of the '048 Patent.

50.     Further, because Cisco's infringement of the '048 Patent is willful, this action is "exceptional" within the meaning of 35 U.S.C. § 285, entitling Zilkr to its attorneys' fees and expenses.

51.     On information and belief, Cisco intends to continue its unlawful infringing activity, and Zilkr will suffer irreparable harm for which there is no adequate remedy at law unless this court enjoins Cisco from further infringing activity.

52.     Zilkr has complied with 35 U.S.C. § 287 with respect to the '048 Patent.

### COUNT III—PATENT INFRINGEMENT OF THE '047 PATENT

53.     Zilkr re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

54.     The '047 Patent, entitled "Multiple Service Group Interactions and Authorizations" issued on January 30, 2018 to inventors Evin Hunt and Omar Paul of Austin, Texas. Zilkr is the owner, by assignment of the '047 Patent. Zilkr owns all rights, interest, and title in and to the '047 Patent, including the right to bring this action and enforce the '047 Patent against infringers, and to collect damages for all relevant times.

55.     In addition to the problems solved by the inventions claimed in the other patents-in-suit as described above, the '047 Patent addresses the problems associated with managing a group of telephone numbers and their associated services. *See, e.g.*, Ex. C at 7:54-67. For example, a telecommunications system can receive the request to activate a third-party service or application for multiple telephone numbers in a group.

56.     As set forth in the attached claim chart (Exhibit G), Cisco directly infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '047 Patent, for example, by making, using, selling, and/or offering to sell Webex subscription services.

57. In addition, Cisco knowingly induces its customers to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '047 Patent. Cisco has known about the '047 Patent before the filing of this complaint. Cisco directs, instructs, and supports its business customers using Webex through personal sales, customer support, and user and admin guides. In particular, Cisco instructs its customers to use the Webex product, with knowledge of the '047 Patent and its infringement by the Accused Product. Cisco allows its customers to add integrations for a business organization. Cisco has induced infringement of the '047 Patent by manufacturing, supplying, distributing, selling and/or offering for sale the Accused Product to its customers with the knowledge and intent that those products would constitute direct infringement of the '047 Patent.

58. The preceding discussion of claim 1 in the '047 Patent is just one example of Cisco's infringement. The Accused Product infringes other claims in the '047 Patent upon same or similar grounds. Zilkr reserves its right to identify additional claims and additional infringing products as supported by discovery in the case.

59. As a result of Cisco's unlawful infringement of the '047 Patent, Zilkr has suffered and will continue to suffer damage. Zilkr is entitled to recover from Cisco the damages suffered by Zilkr as a result of Cisco's unlawful acts of infringement.

60. Cisco was aware of and has been on notice of the '047 Patent before the filing of this complaint and its infringement has been willful and egregious. At a minimum, Cisco has knowledge of the '047 Patent through the filing of this complaint. Because of Cisco's willful and egregious infringement, Zilkr is entitled to enhanced damages, in the form of treble damages, under 35 U.S.C. § 284.

61. To the extent Cisco did not learn of the '047 Patent and its infringement before the filing of this complaint by virtue of its discussions with Shango and communications from Zilkr, Cisco was willfully blind to its infringement of the '047 Patent.

62. Further, because Cisco's infringement of the '047 Patent is willful, this action is "exceptional" within the meaning of 35 U.S.C. § 285, entitling Zilkr to its attorneys' fees and expenses.

63. On information and belief, Cisco intends to continue its unlawful infringing activity, and Zilkr will suffer irreparable harm for which there is no adequate remedy at law unless this court enjoins Cisco from further infringing activity.

64. Zilkr has complied with 35 U.S.C. § 287 with respect to the '047 Patent.

### COUNT IV—PATENT INFRINGEMENT OF THE '607 PATENT

65. Zilkr re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

66. The '607 Patent, entitled "Unified Services Platform Using a Telephone Number as a Common Subscriber Identifier" issued on June 12, 2018 to inventors Evin Hunt, John Abraham, David Walsh, Carlos Ortiz, and Chris Murphy. Zilkr is the owner, by assignment of the '607 Patent. Zilkr owns all rights, interest, and title in and to the '607 Patent, including the right to bring this action and enforce the '607 Patent against infringers, and to collect damages for all relevant times.

67. In addition to the problems solved by the inventions claimed in the other patents-in-suit as described above, the '607 Patent discloses the problems associated with integrating third-party service and applications with a telecommunications system, including where the APIs of third-party services and applications are not compatible with an API of telecommunications

system. In order for a third-party service to be integrated into the telecommunications system, the third-party service must be adapted to work with the APIs of the telecommunication provider system. *See, e.g.*, Ex. D at 8:31-49. The patent discloses a novel method of integrating the telecommunications system's API with the unified services platform API, which itself is integrated with a third-party service or application API, which solves the problem where the APIs from the plurality of application service provider systems are not compatible with the telecommunications system's API. Moreover, the platform receives a definition of a service and a plan for each of third-party services and applications, definitions of actions for the service, including responses to triggering events occurring with a telephone number, and after integrating the APIs through the unified services platform, publishing that information in a provisioning catalog.

68. As set forth in the attached claim chart (Exhibit H), Cisco directly infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '607 Patent, for example, by making, using, selling, and/or offering to sell Webex subscription services.

69. In addition, Cisco knowingly induces its customers to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '607 Patent. Cisco has known about the '607 Patent before the filing of this complaint. Cisco directs, instructs, and supports its business customers using Webex through personal sales, customer support, and user and admin guides. In particular, Cisco instructs its customers to use Webex, with knowledge of the '607 Patent and its infringement by the Accused Product. Cisco also instructs its customers to view apps to integrate with their Webex system. Cisco encourages its customers to develop applications for use in association with Cisco through its developer platform and to publish those applications in the Webex App Gallery. Cisco has induced infringement of the '607 Patent by manufacturing, supplying, distributing, selling and/or offering for sale the Accused Product to its customers with

the knowledge and intent that those products would constitute direct infringement of the '607 Patent.

70. The preceding discussion of claim 1 in the '607 Patent is just one example of Cisco's infringement. The Accused Product infringes other claims in the '607 Patent upon same or similar grounds. Zilkr reserves its right to identify additional claims and additional infringing products as supported by discovery in the case.

71. As a result of Cisco's unlawful infringement of the '607 Patent, Zilkr has suffered and will continue to suffer damage. Zilkr is entitled to recover from Cisco the damages suffered by Zilkr as a result of Cisco's unlawful acts of infringement.

72. Cisco was aware of and has been on notice of the '607 Patent before the filing of this complaint and its infringement has been willful and egregious. At a minimum, Cisco has knowledge of the '607 Patent through the filing of this complaint. Because of Cisco's willful and egregious infringement, Zilkr is entitled to enhanced damages, in the form of treble damages, under 35 U.S.C. § 284.

73. To the extent Cisco did not learn of the '607 Patent and its infringement before the filing of this complaint by virtue of its discussions with Shango and communications from Zilkr, Cisco was willfully blind to its infringement of the '607 Patent.

74. Further, because Cisco's infringement of the '607 Patent is willful, this action is "exceptional" within the meaning of 35 U.S.C. § 285, entitling Zilkr to its attorneys' fees and expenses.

75. On information and belief, Cisco intends to continue its unlawful infringing activity, and Zilkr will suffer irreparable harm for which there is no adequate remedy at law unless this court enjoins Cisco from further infringing activity.

76. Zilkr has complied with 35 U.S.C. § 287 with respect to the '607 Patent.

## INJUNCTIVE RELIEF

77. Zilkr re-alleges and incorporates the preceding paragraphs as if stated fully herein.

78. Zilkr requests injunctive relief, including a permanent injunction against Cisco.

## JURY DEMAND

79. Zilkr hereby demands a trial by jury.

## PRAYER

WHEREFORE, Zilkr prays for judgment in its favor and against Cisco as follows:

a. A judgment that Cisco has infringed, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents;

b. An award of damages adequate to compensate for the infringements, but in no event less than a reasonable royalty made for use of the inventions of the Asserted Patents, together with interest and costs as determined by the Court;

c. An award of enhanced damages under 35 U.S.C. § 284, in the form of treble damages;

d. An award of on-going royalties for any continuing or future infringement of the claims of the Asserted Patents;

e. An award of Plaintiff's reasonable attorneys' fees, costs, and expenses pursuant to 35 U.S.C. §§ 284 and 285 or as otherwise permitted by law;

f. An injunction against Cisco prohibiting Cisco and its officers, agents, servants, employees, and all persons acting in concert with them, from directly or indirectly: (1) using, manufacturing, offering to sell or selling any products falling within the scope of the claims of the Asserted Patents; (2) actively inducing others to infringe

any of the claims of the Asserted Patents; and (3) engaging in all other acts of infringement of any of the claims of the Asserted Patents;

g.  Such other and further relief at law or in equity as the Court determines is just and proper.

Dated: May 20, 2022

By: */s/ Kevin E. Cadwell*
Kevin E. Cadwell, *Lead Attorney*
kcadwell@ccrtlaw.com
Texas Bar No. 24036304
David R. Clonts
dclonts@ccrtlaw.com
Texas Bar. No. 04403700
Michael F. Reeder II
mreeder@ccrtlaw.com
Texas Bar No. 24070481
Lisa M. Thomas
lthomas@ccrtlaw.com
Texas Bar No. 24079455

**CADWELL CLONTS REEDER & THOMAS LLP**
5373 W. Alabama St., Suite 457
Houston, Texas 77056
Phone:  (713) 360-1560
Fax:     (940) 233-8587

*Of Counsel:*

Charles Everingham IV
ce@wsfirm.com
Texas Bar No. 00787447
Claire Henry
claire@wsfirm.com
Texas Bar No. 24053063
Andrea Fair
andrea@wsfirm.com
Texas Bar No. 24078488

**WARD SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Phone: (903) 757-6400
Fax: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF ZILKR CLOUD TECHNOLOGIES, LLC**